UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAVID F.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

6:20-CV-6822-LJV
DECISION & ORDER

---

On October 9, 2020, the plaintiff, David F. ("David"), brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On September 13, 2021, David moved for judgment on the pleadings, Docket Item 12; on February 7, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 14; and on March 21, 2022, David replied, Docket Item 15.

For the reasons that follow, this Court grants David's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

David argues that the ALJ erred in two ways. Docket Item 12-1. First, he argues that the ALJ used "inconsistent and unclear reasoning" to evaluate the medical and nonmedical opinion evidence and formulate his mental residual functional capacity

("RFC").³  *Id.* at 13.  Second, he argues that the ALJ "impermissibly cherry-picked" the opinion evidence and "relied on [the ALJ's] own lay judgment" to formulate his physical RFC.  *Id.*  This Court agrees that the ALJ erred and, because that error was to David's prejudice, remands the matter to the Commissioner.

For claims filed after March 27, 2017, such as David's,⁴ the ALJ evaluates medical opinion evidence under the framework in 20 C.F.R. § 416.920c.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017).  Under the new regulations, the ALJ will consider opinions from a claimant's medical sources but "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[s]."  20 C.F.R. § 416.920c(a).  Instead, the ALJ "will articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions" in light of the regulatory factors.  *Id.* § 416.920c(b), (c)(1)-(5).

The Code of Federal Regulations lists five factors that the ALJ will consider when weighing medical opinions: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency,

---

³ A claimant's RFC "is the most [he] can still do despite [his] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

⁴ David's application for benefits is dated August 17, 2017, Docket Item 11 at 139, but the initial disability determination by the Commissioner indicates that David filed the application on July 19, 2017, *id.* at 66.  That discrepancy does not affect this decision.

purpose, and extent of the relationship; (4) the source's specialization; and (5) any other factors "that tend to support or contradict" the opinion. *Id.* § 416.920c(c)(1)-(5). The ALJ is required specifically to "explain how [he or she] considered the supportability and consistency factors" because they are "the most important factors," and the ALJ "may, but [is] not required to, explain how [he or she] considered the [remaining] factors." *Id.* § 416.920c(b)(2); *see also Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, at *7 (N.D.N.Y. Mar. 30, 2021). And in explaining a decision, the ALJ also "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that '[] a reviewing court[] may assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (alterations omitted) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004)).

In formulating David's mental RFC,[5] the ALJ found the November 2017 opinion of state agency consultant L. Serbonich, Psy.D., "persuasive because it is consistent with the evidence of record." Docket Item 11 at 25; *see also id.* at 55-65, 447-48 (Dr. Serbonich's report and supplement). The ALJ found the other medical opinions about

---

[5] The ALJ determined that David has the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except he can "occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk up to two hours in an eight[-]hour day; sit about six hours in an eight hour day; occasionally push and/or pull 10 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; understand, remember, and carry out simple instructions and tasks; occasionally interact with co-workers and supervisors; [and have] little to no contact with the general public" and that David is "able to work in a low stress work environment (i.e.[,] no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in work routine and processes, etc.); and [is] able to consistently maintain concentration and focus for up to two hours at a time." Docket Item 11 at 23.

4

David's mental limitations—the June 2017 opinion of Licensed Clinical Social Worker ("LCSW") Paul Wilson, the November 2018 report of Licensed Mental Health Counselor ("LMHC") Carly St. John,[6] and the August 2019 report of Nurse Practitioner ("NP") Kathleen Calnan—not persuasive because those opinions "are not consistent with the treatment record."[7]  *Id.* at 26; *see also id.* at 802-05 (Wilson's opinion); *id.* at 815-18 (St.

---

[6] The new regulations define "medical source" as "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law."  20 C.F.R. § 416.902(i).  Both licensed mental health counselors and licensed clinical social workers are considered medical sources under that definition, and the ALJ therefore must consider those opinions consistent with the requirements of 20 C.F.R. § 416.920c.  *See, e.g.*, *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (noting the ALJ properly "discussed the medical opinion evidence offered by four medical professionals, including the opinion[] offered by [a licensed mental health counselor]"); *Kimberly W. v. Kijakazi*, 2022 WL 561665, at *3 (N.D.N.Y. Feb. 24, 2022) ("As a licensed clinical social worker, [the provider] is not considered an acceptable medical source under Social Security regulations.  However, as a licensed healthcare worker working within her scope of practice, she is considered a medical source rather than a nonmedical source.") (citation omitted) (citing 20 C.F.R. §§ 416.902(a), (i), (j)).

[7] The ALJ also noted that the opinions of Wilson, St. John, and Calnan "do not meet the durational requirement," *see* Docket Item 11 at 26, but that cryptic and conclusory statement does little to explain his reasoning.  The Commissioner argues that Wilson, St. John, and Calnan "durationally limited their responses to less than a 12-month period . . . [and, a]s the ALJ observed, such responses were not persuasive insofar as they were inapposite under the Act's 12-month durational requirement."  Docket Item 14-1 at 22-23; *see also* 20 C.F.R. § 416.905(a) (providing that, to prove disability, a claimant must establish, *inter alia*, the existence of a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months.").  But the ALJ did not say that, so the Commissioner's argument is nothing more than an impermissible *post hoc* rationalization of the ALJ's determination which this Court will not consider.  *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action." (citation and internal quotation marks omitted)).  And even if the Commissioner is correct, the fact that an opinion did not cover a certain period of time is not a good reason to find the opinion unpersuasive.  Stated another way, the fact that an opinion does not cover the "durational requirement" might be a reason to find that the opinion by itself is not sufficient to establish a disability, but it is not a reason that might call into question the persuasiveness of the opinion.

John's opinion); *id.* at 819-22 (Calnan's opinion).  But the ALJ said nothing more about how or why the various opinions were, or were not, consistent with the treatment record.  And that was error.  *See Brianne S. v. Comm'r of Soc. Sec.*, 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) ("Where an ALJ 'merely states' that [a medical source] opinion is 'not consistent with the overall medical evidence,' he has failed to adequately explain his conclusions regarding the consistency factor." (alteration omitted) (quoting *Raymond M. v. Comm'r of Soc. Sec.*, 2021 WL 706645, at *10 (N.D.N.Y. Feb. 22, 2021))).

Indeed, in evaluating the medical opinion evidence, the ALJ never did anything more than broadly state conclusions.  Such "terse and conclusory analysis is inadequate because it frustrates this Court's meaningful review."  *See Darla W. v. Comm'r of Soc. Sec.*, 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021); *see also Gorny v. Comm'r of Soc. Sec.*, 2018 WL 5489573, at *4 (W.D.N.Y. Oct. 29, 2018) (concluding that where the ALJ does "not connect the record evidence and RFC findings" or otherwise "explain how the record evidence supported his RFC findings," his decision leaves the reviewing court "with many unanswered questions and does not afford an adequate basis for meaningful judicial review").  An ALJ must provide "a distinct analysis that would permit adequate review on appeal," *Aung Winn v. Colvin*, 541 F. App'x 67, 70 (2d Cir. 2013) (summary order), and must support each conclusion with relevant medical evidence, *see Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  The ALJ's failure to do that here requires remand.

The ALJ also "fail[ed] to adequately consider and apply the new regulatory factors" to his analysis.  *See Acosta Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2022 WL 717612

6

(S.D.N.Y. Mar. 10, 2022); *see also Rosario v. Comm'r of Soc. Sec.*, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022) ("Under the new regulations, the ALJ must 'explain,' in all cases, 'how [he or she] considered' both the supportability and consistency factors, as they are 'the most important factors.'" (alterations in original) (quoting 20 C.F.R. § 416.920c(b)(2))). In particular, the ALJ did not evaluate the consistency of the medical opinions with "the evidence from other medical sources and nonmedical sources," *see* 20 C.F.R. § 416.920c(c)(2). Among other things, the consistency factor "calls for a comparison between the medical source's opinion and 'evidence from other medical sources and nonmedical sources' in the file." *Acosta Cuevas*, 2021 WL 363682, at *15 (quoting 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). The ALJ did not do that here. And had he done so, the ALJ might have noted the remarkable consistency among the findings of both the medical sources noted above and the nonmedical sources, including Marriage and Family Therapist ("MFT") Andres Gutierrez and Licensed Master Social Worker ("LMSW") Tiffany Cooper.[8] *See* Docket Item 11 at 684-87 (Cooper's March 2017 report); *id.* at 808-811 (Gutierrez's April 2018 report).

---

[8] Under the new regulations, therapists and social workers without clinical designation are not considered medical sources because they are not "licensed . . . healthcare worker[s]." *See* 20 C.F.R. § 416.902(i), (j). As "[p]ublic and private social welfare agency personnel," *see id.* § 416.902(j)(3), therapists and social workers are considered nonmedical sources whose opinions are not subject to the same consideration as those of medical sources, *see id.* § 416.920c(d) (providing that an ALJ is "not required to articulate how [he or she] considered evidence from nonmedical sources using the requirements in paragraphs (a) through (c) in this section"); *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5850 (noting that "nonmedical sources" include "counselors, . . . social workers, and public and private social welfare agency personnel."). But the "regulations elsewhere may require [the ALJ] to articulate how [he or she] consider[ed] evidence from nonmedical sources, such as when [the ALJ] evaluate[s] symptoms." *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5855; *see also* 20 C.F.R. § 416.929(a) (providing that the ALJ "will consider . . . any description [the

For example, Wilson, St. John, Cooper, and Gutierrez each found that David is very or moderately limited in performing even simple tasks.[9]  *See, e.g., id.* at 804 (Wilson found David is "[v]ery [l]imited" in "perform[ing] simple and complex tasks independently" and "[m]oderately [l]imited" in the ability to "follow, understand[,] and remember simple instructions and directions" and "perform low stress and simple tasks"); *id.* at 817 (St. John found moderate limitation for "perform[ing] simple and complex tasks independently"); *id.* at 686 (Cooper found moderate limitation in "perform[ing] simple and complex tasks independently" and in the ability to "follow, understand[,] and remember simple instructions and directions"); *id.* at 810 (Gutierrez found moderate limitation in the ability to "perform simple and complex tasks independently," "follow, understand[,] and remember simple instructions and directions," and "perform low stress and simple tasks").  And Wilson, St. John, and Gutierrez—as well as Dr. Serbonich, whose opinion the ALJ found persuasive—all opined that David is limited in paying attention and concentrating.  *See id.* at 804, 810, 817 (Wilson, St. John, and Gutierrez found moderate limitation for "maintain[ing] attention and concentration for rote tasks"); *id.* at 62 (Dr. Serbonich found David is "[m]oderately limited" in "maintain[ing] attention and concentration for extended periods.").

Without addressing those consistencies, the ALJ concluded that David could "consistently maintain concentration and focus for up to two hours at a time" and

---

claimant's] nonmedical sources may provide about how [the claimant's] symptoms affect [the claimant's] activities of daily living and [the claimant's] ability to work.").

[9] The reports of Wilson, St. John, Cooper, and Gutierrez define a moderate limitation as one that renders the patient "[u]nable to function 10-25% of the time." Docket Item 11 at 686, 804, 810, 817.  The reports consider a patient to be "[v]ery [l]imited" if he is "[u]nable to function 25% or more of the time."  *Id.*

"understand, remember, and carry out simple instructions and tasks" without limitation. *See id.* at 23.  That error was material because the hypotheticals that the ALJ posed to the vocational expert ("VE") did not account for what the providers found were David's limitations in performing simple tasks.  *See generally Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002) ("If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability.").  And because the ALJ relied on the VE's responses to those inadequate hypotheticals to conclude that David was not disabled, *see* Docket Item 11 at 28 ("Based on the testimony of the vocational expert, the [ALJ] concludes that[] . . . the claimant is capable of making a successful adjustment to other work . . . . A finding of 'not disabled' is therefore appropriate."), the ALJ's error in evaluating the opinion evidence was not harmless,[10] *see Lewis v. Colvin*, 2017 WL 2703656, at *2

---

[10] The ALJ also apparently discounted findings about David's struggles with suicidal and self-injurious behaviors.  In their reports, Wilson, St. John, and Calnan all mentioned David's history of "[s]uicide attempt[s]" and "[r]epetitive violent actions toward [him]self or others."  *See* Docket Item 11 at 804, 816, 821.  The ALJ acknowledged that David "has cut himself and experienced suicidal ideation," *id.* at 24, but apparently determined that David was past those issues because he "denied suicidal . . . ideation" on several occasions, *see id.* at 27 (citing *id.* at 212, 372).  Those isolated instances, however, did not provide good reason to find that David's self-injurious tendencies were under control.  *See Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) ("Cycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." (alteration omitted)).  In fact, David attempted suicide at least twice during the relevant period, *see* Docket Item 11 at 832 (attempt in December 2017); *id.* at 1211 (August 2019 reported he had "attempt[ed] . . . 8 months ago"), and the record is replete with evidence that David has suicidal tendencies that are not well-controlled, *see id.* at 796 (David "reported ongoing suicidal thoughts"); *see also id.* at 693, 700, 707, 713, 719, 722, 726, 730, 733, 738, 799

(W.D.N.Y. June 23, 2017) (remanding where proper consideration of the medical opinion evidence "could have resulted in a finding of disability [] or at the very least a more restrictive RFC").

The ALJ also erred in formulating a physical RFC with specific limitations that have no support in the record.  For example, treating physician Telva Olivares, M.D., opined that David was very limited in his ability to walk, stand, and sit, Docket Item 11 at 789, 1117, and Nurse Practitioner Wendy Pettit opined that David could sit and stand for only twenty minutes at a time, *id.* at 826.  The ALJ found that Dr. Olivares's opinion was not persuasive, *id.* at 26, and that NP Pettit's opinion was "generally persuasive" except for "the limitation to occasional sitting," *id.* at 25.

In reaching those conclusions, the ALJ did not address the consistency between those opinions.  As noted above, that was error.  But the ALJ then compounded that error by limiting David to sitting for six hours, and standing or walking up to two hours, in an eight-hour workday.  *See id.* at 23.  Those specific limitations apparently came from whole cloth.  And because those limitations are not as restrictive as the limitations found by a medical provider, the ALJ improperly substituted his lay opinion for medical opinions—another error requiring remand.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[I]t is well[ ]settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." (citation and internal quotation marks omitted)); *see also Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) ("[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as

---

(David's "Chronic Suicide Risk" assessed as "moderate" or "high").  So that was error as well.

10

a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.").

In sum, because the ALJ did not appropriately evaluate the medical opinions, because he did not address the consistency between those opinions, and because he fashioned parts of the RFC from whole cloth, remand is required.

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 14, is DENIED, and David's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: October 18, 2022
        Buffalo, New York

                                             */s/ Lawrence J. Vilardo*
                                             LAWRENCE J. VILARDO
                                             UNITED STATES DISTRICT JUDGE